McGowen v. Campbell.

---

## PERRY McGOWEN v. P. B. CAMPBELL.

1. BILL OF EXCEPTIONS, *When Part of Record.* After a bill of exceptions has been allowed and signed by the justice, if the same is at once filed by him in the action, it thereby becomes a part of the record; it is not necessary for it to be entered at length upon the docket of the justice.

2. CONTINUANCE *in Justices' Courts.* Section 317 of the code, providing that no continuance shall be granted on the ground of the absence of evidence if the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, is not applicable to trials in justices' courts, as special provision for granting continuances in such courts is specifically made by §§ 81 and 82 of the justices' code.

3. VERDICT, *by Undue Means.* Where a verdict has been obtained by undue means in a trial before a justice, the party prejudiced thereby is entitled to a new trial, and if the justice refuses to grant it his ruling thereon is subject of review by proceedings in error in the district court.

4. TRIAL, *During all Night.* It is an unusual and unjust proceeding, and a great abuse of discretion, for a justice of the peace, without special circumstances existing therefor, to proceed with the trial of an action during all the night, against the objection and protest of one of the parties litigant.

### *Error from Neosho District Court.*

OCTOBER 10th, 1881, *P. B. Campbell* commenced an action before a justice of the peace of Neosho county, against *Perry*

*McGowen,* to recover the possession of certain cattle. The order for the delivery of the property was returned on the 18th day of October, 1881. The case was first heard on the 18th day of October, 1881, but the jury, being unable to agree, were discharged, and by agreement of the parties the cause was set for trial November 10, 1881, at nine o'clock A. M. On the 10th of November, 1881, a jury not being in attendance, it was agreed between the parties that the case should be continued to November 11, 1881, at nine A. M. On the 11th day of November, at the hour of nine A. M., the parties appeared, but owing to the bad weather none of the jury summoned was present. A new jury was summoned, and court adjourned to one o'clock P. M. At one o'clock P. M. the case was called for hearing. Wilson Layfield was called three times by the constable as a witness on the part of the plaintiff, and not answering, the plaintiff, by his attorney, asked for an attachment. A writ of attachment was issued for Layfield, returnable forthwith, and the court adjourned to seven o'clock P. M. About seven o'clock P. M., court met pursuant to adjournment, and as the writ of attachment had not been served upon Layfield, plaintiff filed an affidavit asking for a continuance until eight o'clock A. M. November 12, 1881. Defendant objected to the affidavit as insufficient; the court sustained the objection, and plaintiff excepted. Plaintiff asked another half-hour to prepare another affidavit for a continuance. This was granted by the court. At the end of the time, plaintiff filed a second affidavit, asking a continuance to eight o'clock A. M. of the next day. Thereupon the defendant consented that on the trial of the case the facts alleged in the affidavit for a continuance should be read, and treated as the deposition of the absent witness, Wilson Layfield. But plaintiff stated that he did not desire to read said affidavit as the testimony of the witness, but wished the personal attendance of the witness. The application for continuance was denied, and plaintiff was given permission to read and treat the affidavit as a deposition. At the close of the examination of the plaintiff as a witness, it then being twenty min-

utes past ten o'clock P. M., the plaintiff objected to proceeding any further that night with the case; but the court refused to adjourn, and ordered that the cause proceed, to which plaintiff excepted. The justice proceeded with the trial of the case all night, the jury returning their verdict at five o'clock A. M., November 12th. The verdict was in favor of the defendant. Plaintiff filed a motion for a new trial, alleging —

"1. The verdict was obtained by fraud, partiality, and undue means.

"2. Said verdict is contrary to law.

"3. Errors of law occurring at the trial, and excepted to by the plaintiff at the time.

"4. Misconduct of the court, by which the said plaintiff was prevented from having a fair trial.

"5. Misconduct of the defendant, whereby the plaintiff was prevented from having a fair trial.

"6. Abuse of discretion on the part of the court, whereby plaintiff was prevented from having a fair trial."

The motion was overruled, and judgment rendered in favor of the defendant. A bill of exceptions was allowed and signed by the justice, and filed with him as a part of the record of the case, on November 21, 1881. On the 11th day of January, 1882, plaintiff filed his petition in error, and a transcript of the case from the justice's docket, in the district court of Neosho county. The hearing of the case was commenced on the 25th day of January, 1882, and concluded on February 1, 1882. The district court reversed the judgment of the justice of the peace, with costs, and retained the cause for trial in that court. The defendant brings the case here.

*L. Stillwell,* and *C. A. Cox,* for plaintiff in error.

*Hutchings & Denison,* and *Hall & Hill,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the hearing of the petition in error in the district court, the plaintiff in error (defendant below) objected to the consideration of the bill of exceptions allowed

and filed by the justice of the peace, upon various grounds. We will notice these, *seriatim.*

It is urged that as the bill of exceptions was not under the seal of the justice, it was therefore a nullity. Not so. A justice of the peace is not required in any case to use a seal, for there is no provision of law anywhere providing him with a seal. (*Stager v. Harrington,* 27 Kas. 415.)

It is also contended that as the bill of exceptions was not copied at length in the docket of the justice, it was no part of the record or transcript of the case. This objection is not tenable. After a bill of exceptions has been allowed and signed by a justice, if the same is filed at once by him, it thereby becomes a part of the record. It need not be entered in full upon the docket of the justice, as the law makes no such requirement. (Justices' Code, § 112.)

1. Bill of exceptions, when part of record.

It is further claimed that the transcript is not properly certified. The transcript contains the following words: "A copy of which bill of exceptions is hereto attached, marked 'A,' and made a part hereof." At the end of the bill of exceptions are these words:

"THE STATE OF KANSAS, MISSION TOWNSHIP, ss.—I do hereby certify that the above and foregoing is a true copy of the bill of exceptions filed in my office November 21, 1881.
          JOHN Y. OWENS, J. P."

At the close of the transcript is the following certificate:

"I do hereby certify that the above and foregoing is a full and true copy from my docket of the proceedings had by and before me at my office, in said township, in the above and foregoing action.          JOHN Y. OWENS, J. P."

The statement in the transcript is sufficient to make the copy of the bill of exceptions a part thereof, and the certificates make the transcript as full and complete as the law requires.

Counsel further attacked the transcript in the district court, upon the ground that the following words, "A copy of which bill of exceptions is hereto attached, marked 'A,' and made

a part hereof," were improperly incorporated therein, and renews the attack in this court.   It appears from the record that these words were interlined in the handwriting of one of the counsel for defendant in error, after the transcript had been made out and certified to by the justice.   But it further appears that the counsel saw the justice personally about the interlineation, and that officer fully approved and ratified the insertion of these words in the transcript.   It therefore came before the district court the same as if the words had been interlined by the justice before being filed in that court, and the district court committed no error in treating these words as a part of the transcript.   There was no necessity for a new transcript to be filed, and all the objections to the validity of the record presented to the district court were properly overruled.

It is insisted that an order of the justice overruling a motion for a new trial is a matter of discretion purely, and not the subject of review on error.   This objection is disposed of adversely thereto in *Stager v. Harrington*, supra; see also *Theilen v. Hann*, 27 Kas. 778.

Again, it is said that no proper motion for a new trial was filed with the justice.   The motion contained the various grounds embraced in § 110, and also other grounds, which possibly the justice had no authority to consider.   Yet as valid and legal grounds for a new trial were contained in the motion of the party aggrieved, the fact that other reasons were alleged therein would not defeat the consideration of the motion, or authorize the justice on account of the insertion of such additional matters to refuse a new trial if any of the statutory grounds actually existed.

Owing to the absence of a material witness, the plaintiff applied to the justice for a continuance of the case for about twelve hours.

The justice seems to have thought that due diligence was shown, but when the defendant below consented that the affidavit presented for a continuance might be read and treated as the deposition of the absent witness, the justice of the

peace overruled the application, and ordered the trial to proceed. This was against the objection of the party applying for the continuance, who insisted that he did not wish to have the affidavit read as the testimony of the absent witness, as he desired his personal attendance. The justice proceeded with the trial nearly all night, the jury returning their verdict at five o'clock on the morning of November 12th. Plaintiff below read the affidavit for continuance as the deposition of the absent witness. But C. A. Cox, one of the attorneys of defendant below, in his argument to the jury, among other things said, with reference to the affidavit: "This is what Campbell swears Layfield will swear to; Campbell has been impeached. His neighbors swear they will not believe him under oath. His reputation is bad. You cannot believe Campbell; what will you say of this deposition?" At this point, one of the counsel for plaintiff below objected to the remarks of Mr. Cox; whereupon Mr. Cox remarked to the jury: "All right; I will withdraw what I have said, and leave that for Mr. Stillwell." To these remarks plaintiff below at the time excepted, and thereupon Mr. Stillwell, counsel for defendant below, said: ".Make such exceptions as you want to. I will go for him worse than that when I get after him." After Mr. Cox had closed his argument, Mr. Stillwell addressed the jury on behalf of the defendant below, and among other things, said, referring to the affidavit read as a deposition: "We are bound to treat this affidavit as the deposition of Layfield, but you have not seen Layfield's face; you have not heard his voice; there has been no opportunity for cross-examination; you have no means of knowing what the witness would have testified to on cross-examination."

The continuation of the trial during the night was an unusual and unjust proceeding, and one not at all in accordance with a fair or proper administration of justice. Special circumstances might possibly justify a court in proceeding with a trial until after midnight; but the mere fact that a criminal charge was pending against the defendant below, to which he

was required to answer on November 12, 1881, before a justice in another township, was not a sufficient excuse for keeping open the court all night, as the case might have been adjourned, if it were deemed necessary, until after the conclusion of the hearing of the criminal charge. The remarks of counsel concerning the affidavit were greatly out of place, after the statement to the justice that it should be treated as a deposition. Sec. 317 of the code, providing that no continuance shall be granted on the ground of the absence of evidence if the adverse party consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, has no application to justices' courts. Secs. 81 and 82 of the justices' code make provisions for the adjournment of trials before justices, and thereby special provision is made by the statute for continuance in justices' courts. While an application to a justice of the peace for an order of continuance is not reviewable on petition in error, (*Theilen v. Hann*, supra,) yet, taking all of the circumstances of the trial before the justice, including the remarks of counsel upon the affidavit, and the continuation of the trial during the night against the objection of the plaintiff below, we think we are not wrong in characterizing the verdict as having been obtained by undue means. As the conclusion we have reached sustains the action of the district court, and as the case below must be retried, we decline to enter upon an examination of the other questions submitted.

*2. Continuance in justices' courts.*

*3. Verdict, by undue means.*

The judgment of the district court will be affirmed.

All the Justices concurring.